UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 19-mj-03223-Goodman

UNITED STATES OF AMERICA

v.

TOMMY NIEVES,

    Material Witnesses.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ____ Yes   _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes  _X_ No

                                   Respectfully submitted,

                                   ARIANA FAJARDO ORSHAN
                                   UNITED STATES ATTORNEY

By:             _____
                 ROBERT F. MOORE
                 Assistant United States Attorney
                 Court No: A5502488
                 99 N.E. 4th Street
                 Miami, FL 33132
                 Tel: No. (305) 961-9411
                 Fax No. (305) 536-4676
                 E-mail: Robert.moore@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>TOMMY NIEVES,<br><br>Material Witnesses. | Case No. 19-mj-03223-Goodman |

## MATERIAL WITNESS COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  July 30, 2019  in the county of  Miami-Dade  in the  Southern  District of  Florida, and elsewhere , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 3144 | Being a material witness in a criminal proceeding, whose presence may become impracticable to secure by subpeona, and therefore whose presence is required at a deposition. |

This material witness complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Fernando Sacasas, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 31, 2019

_____
Judge's signature

City and state: Miami, Florida

Jacqueline Becerra, U.S. Magistrate Judge
*Printed name and title*

Jonathan Goodman

## AFFIDAVIT

I, Fernando Sacasas, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Task Force Officer ("TFO") with Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 15, 2018. I am currently assigned to the ATF Miami Office where I am responsible for conducting investigations regarding violations of federal laws, particularly those laws found in Titles 18 and 21 of the United States Code. Prior to becoming a TFO, I worked for the Miami-Dade Police Department since 2005 in various capacities.

2. I am familiar with the facts and circumstances surrounding this investigation from my own investigative efforts, as well as from information obtained from other law enforcement officers with personal knowledge of the evidence and activities described herein. Although I am familiar with the facts and circumstances of this investigation, I have not included each and every fact known to me about the matters set forth herein, but only those facts that I believe are necessary to establish probable cause that the testimony of Tommy NIEVES ("NIEVES") is material to the prosecution of Braulio Perez ("Perez") for possession of a firearm and ammunition by a convicted felon in United States v. Perez, 19-20003-CR-RAR.

## PROBABLE CAUSE

3. On or about August 2, 2018, at approximately 3:22 pm, NIEVES went to visit his friend, Julio Hernandez ("Hernandez"), at Hernandez's residence to borrow weight lifting equipment. NIEVES arrived at Hernandez's residence and went to the backyard to retrieve the equipment. As NIEVES entered the backyard, he encountered Perez, who is Hernandez's father's tenant. Perez lived in a small efficiency apartment located towards the back of the Hernadez's property. When NIEVES entered the backyard, Perez approached NIEVES with his

pit-bull to question why NIEVES was in the backyard and a verbal altercation ensued. Perez returned to his efficiency and came back out raising up his shirt and exposing a chrome firearm with a black handle tucked in his waistband. Perez yelled, "What's up now?!" NIEVES ran inside of Hernandez's residence and Hernandez immediately called the police. Perez began yelling that he was going to kill NIEVES.

4. In total, five calls were placed to 911 for service during the course of the day. The first three calls were placed prior to law enforcement's arrival, and prior to Perez's arrest. On the third of those calls, NIEVES took the phone and told the 911 operator that they need to get to the residence soon because Perez had a gun and something bad could happen.

5. When law enforcement arrived, they made contact with Perez who was damaging the front door to the efficiency. Perez was placed in handcuffs, put in the back of the unit, and charged with aggravated assault. During this timeframe, NIEVES is observed on body camera repeating his account of the event to officers, stating that Perez brandished a chrome revolver in his waistband at him. While in route to the station, Perez told Officers that he would kill them if he caught them in the street. Perez also kicked the rear driver-side window of the unit with his feet until the window no longer worked. Perez was subsequently charged with threatening a law enforcement officer.

6. Thereafter, Hernandez entered Perez's efficiency to secure Perez's pit-bull. Hernandez attempted to take the loose dog to the bathroom because the door to the efficiency had come off the hinges and was on the living room floor. While securing Perez's dog in the bathroom, Hernandez saw the chrome firearm with the black handle on a shelf in the bathroom. Hernandez exited the efficiency, and he and his sister both called the police to inform them that he found Perez's firearm. Law enforcement arrived and secured the residence.

2

7. Later, Detective Jean Rivas arrived on the scene and took a seven-minute tape-recorded statement from NIEVES. During the statement, NEVES again detailed how Perez first approached him with a dog and began to argue with him. NIEVES also again stated that Perez went back into the efficiency and then came back out and brandished a chrome revolver in his waistband.

8. Detective Rivas then prepared a search warrant for the efficiency. The search warrant was authorized, and law enforcement subsequently entered the bathroom of the efficiency and found the Chrome Smith and Wesson .38 fully loaded with six live rounds.

9. On August 9, 2018, NIEVES spoke with the Miami State's Attorney's Office where he again stated that Perez approached him with his dog and began yelling profanities at him. NIEVES and Perez exchanged words and Perez walked into his efficiency, came back out, approached him, and pulled up his shirt to show the firearm in his waistband. Perez grabbed the firearm's handle and began to pull the firearm out of his waistband and NIEVES put his hands up and walked away into the main residence where Hernandez called the Police.

10. On January 8, 2019, Perez was charged by Indictment in the Southern District of Florida with possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). Perez was arrested on April 26, 2019. Trial was set for June 24, 2019.

11. On June 10, 2019, the government attempted to serve NIEVES at 1793 NW 18th Terrace in Miami, Florida, the address that NIEVES provided to law enforcement at the time of the August 2, 2018 incident. NIEVES' mother and daughter answered the door at this residence. NIEVES' daughter directed law enforcement to a separate residence at 768 NW 31st Street in

Miami, Florida, where NIEVES was living with his fiancé and young child. NIEVES was served for trial at that residence.

12. On June 13, 2019, NIEVES indicated via text message that he would not appear in court to testify pursuant to the subpoena. NIEVES indicated that we would need to arrest him if we wanted him to appear in court. NIEVES hung up the phone any time attempts were made to contact him on the number that he provided to law enforcement. NIEVES ceased all further text message communication.

13. On June 21, 2019, trial was continued to the two-week trial period commencing on July 29, 2019. On or about July 9, 2019, law enforcement again attempted to serve NIEVES at the 768 NW 31st Street Miami, Florida, address used on June 10, 2019. Law enforcement learned from NIEVES' fiancé's father, Almicar Torres, who was at the residence at that time, that NIEVES moved from the 768 NW 31st Street address. Torres stated that he did not know where NIEVES and his daughter were currently living.

14. On July 26, 2019, the government again attempted to serve NIEVES at 1793 NW 18th Terrace in Miami, Florida. NIEVES' mother received the subpoena on NIEVES' behalf and said that she would make sure that NIEVES received the subpoena. On July 27, 2019, NIEVES' fiancé sent the undersigned a text message indicating that she did not want law enforcement to serve NIEVES at his mother's residence and that she did not want NIEVES to testify. NIEVES's wife explained in the text that she and NIEVES had moved to avoid ever seeing Perez again.

15. On July 29, 2019, law enforcement spoke with Hernandez who indicated that he spoke with NIEVES on or about July 26, 2019, and July 29, 2019. Hernandez stated that NIEVES asked when the case was set for trial. Hernandez stated that he informed NIEVES that

the trial was set for August 5, 2019, and NIEVES indicated that he would not come to court to testify. NIEVES further indicated that if he were arrested and brought to court, he would refuse to answer any questions.

## CONCLUSION

16. Based on the foregoing facts, NIEVES' testimony is material to the prosecution of this case. I submit that probable cause exists to believe that the witness' refusal to come to court makes it impractical to secure his presence by subpoena for trial in the prosecution of Perez for possession of a firearm and ammunition by a convicted felon in United States v. Perez, 19-CR-20003-RAR. Therefore, his arrest and subsequent detention is necessary to preserve their testimony pursuant to Title 18, United States Code, Section 3144.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Fernando Sacasas
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
this 30th day of July, 2019.

_____
Honorable ~~Jacqueline Becerra~~ Jonathn Goodman
United States Magistrate Judge

5